UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

Rosetta Simmons,

                    Plaintiff,                MEMORANDUM OPINION
                                            AND ORDER (CPS)(RLM)

    -against-                             CV-02-1575

New York City Transit Authority,

                    Defendant.

---------------------------------------X

SIFTON, Senior Judge.

      Plaintiff Rosetta Simmons ("Simmons")commenced this action

on March 13, 2002 against her employer, defendant New York City

Transit Authority ("the Transit Authority") alleging that the

Transit Authority discriminated against her on the basis of her

disability in violation of: (1) the American with Disabilities

Act; (2) the Rehabilitation Act of 1973; (3) New York State Human

Rights Law; and (4) New York City Human Rights Law.  A jury trial

took place between December 3, 2007 and December 10, 2007.  The

jury returned a verdict for plaintiff, awarding her $150,000 in

compensatory damages.  Presently before the court is plaintiff's

motion for attorneys' fees and costs.  For the reasons set forth

below, plaintiff is awarded $194,447.95 in attorneys' fees and

$4,175 in costs.

## BACKGROUND

     The following facts are based on the parties' submissions in

connection with this motion and the record of the trial and other

proceedings held before the undersigned.  Familiarity with the prior proceedings is assumed.

*Procedural History*

Defendant moved for summary judgment on March 15, 2006, and on February 27, 2007 the motion was denied in open court.

A jury trial was conducted between April 30, 2007 and May 11, 2007, resulting in a mistrial when the jury failed to reach a verdict.

Simmons then filed a Rule 50 motion for judgment as a matter of law and a Rule 56 motion for partial summary judgment on the question of liability.  After the mistrial, the Transit Authority renewed its Rule 50 motion and filed another Rule 56 motion. Oral argument was heard on June 28, 2007 and decision was reserved.  On November 15, 2007, the undersigned denied all four motions in open court.

Prior to the second trial, the parties agreed that in the event that the jury found for the plaintiff, the undersigned would determine the amount of economic damages to be awarded.

A jury trial commenced on December 3, 2007.  On December 10, 2007, the jury reached a verdict in favor of plaintiff on all of her claims.  The jury awarded her $150,000 in compensatory damages.

Following the jury's verdict, the parties entered into a partial stipulation in connection with the economic damages

award.    The parties agreed to pensionable gross lost wages for
the period January 16, 2001 through March 22, 2003.  Gross wages
in the amount of $97,099 are due to Simmons.  The parties have
agreed that pension benefits will be calculated by the New York
City Employee Retirement System (NYCERS) and pensions
contributions will be deducted from the gross lost wages.  In
addition, the gross lost wages will be reduced by the $28,350 in
unemployment compensation that Simmons received resulting in a
net back pay loss of $68,749.  The net back pay loss will be
subject to payroll deductions.  Prejudgment interest of $12,202
has been calculated on the net back pay loss.

        The parties disputed whether plaintiff is entitled to
compensation for lost fringe benefit time, including sick days,
personal days, holidays, and vacation days.  The Court reached a
decision on this issue in a separate memorandum opinion and order
denying plaintiff an award of such benefits.

## DISCUSSION

*Attorneys' Fees*

        Plaintiff seeks $192,790.54 in attorneys' fees and costs.
Attorney fees are available to the prevailing party under

the American with Disabilities Act,[1] the Rehabilitation Act,[2] and the Administrative Code of the City of New York.[3]  Plaintiff is a prevailing party who is entitled to attorneys' fees because the jury rendered a verdict in her favor on all of her claims and awarded her compensatory damages in the amount of $150,000.

The Second Circuit uses the "presumptively reasonable fee," known as the "lodestar figure" (or "lodestar") in other circuits, to determine reasonable attorneys' fees for federal claims.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007); *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048, 2007 WL 1373118 (S.D.N.Y. 2007).  The presumptively reasonable fee "is arrived at by 'multiplying the number of hours reasonably expended on the litigations ... by an hourly rate.'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433(1983)).

*Hourly Rates*

---

[1] The ADA provides that a court may, "in its discretion ... allow the prevailing party ... a reasonable attorney's fee, including litigation expenses and costs..." 42 U.S.C. § 12205.

[2] The Rehabilitation Act provides in relevant part: " In any action . . . to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b).

[3] The New York City Administrative Code provides: "[T]court, in its discretion, may award the prevailing party costs and reasonable attorney's fees." N.Y.C. Admin. Code § 8-502(f).

Plaintiff seeks fees for lead counsel Gregory Antollino, as well as attorneys Victor Marshall and Jason Baxter, at the hourly rates of attorneys practicing in the Southern District of New York ("Southern District"), which are higher than the hourly rates charged in the Eastern District. Defendant opposes the application of Southern District hourly rates to this action.

The reasonable rate used to determine the amount of attorneys' fees to award is calculated according to the prevailing rates in the district in which the court sits. *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). However, "the district court may adjust th[e] base hourly rate to account for a plaintiff's reasonable decision to retain out-of-district counsel." *Arbor Hill*, 493 F.3d at 111-112. When "deciding whether to use an out-of-district hourly rate in its fee calculation" the district court should look at, "what a reasonable, paying client would be willing to pay," to have the case litigated efficiently. *Id* at 12.

Plaintiff hired her lead counsel for his experience in the area of employment law, and in particular, his experience litigating disability discrimination cases, both in the Southern and Eastern Districts. In particular, counsel litigated *Norville v. Staten Island University*, No. 96-CV-5222 (E.D.N.Y. 2003), an employment discrimination case that included disability discrimination claims based on the

employer's failure to provide a reasonable accommodation through reassignment. Attorney Antollino has also represented more than twenty plaintiffs in employment actions in the Eastern District. *See* Declaration of Gregory Antollino ["Antollino Decl."] ¶¶ 8-9 and Reply Declaration of Gregory Antollino ["Reply Decl."], generally.

In addition, travel time between the Southern and Eastern District is minimal as the principal courthouses for each district are minutes away from each other, on either side of the East River. Although there may be other civil rights attorneys in the Eastern District, a reasonable paying client would, like plaintiff, hire Attorney Antollino even though his office is located in the Southern District, based on his experience, success rate and proximity to the courthouse in which the litigation would take place.[4] Accordingly, I will apply the billing rates of attorneys located in the Southern District.

In order to set the hourly rates, courts compare the attorneys' usual billing rates with the prevailing market rates in the applicable district. *Miele v. New York State Teamsters Conference Pensions & Retirement Fund*, 831 F.2d 407 (2d Cir. 1987). The prevailing market rate is determined by "rely[ing]

---

[4] I note that the defendant, presumably a reasonable paying client, also chose to hire counsel practicing in the Southern District.

on [the court's] own knowledge of comparable rates charged by lawyers in the district," *Morris* v. Eversley, 343 F.Supp.2d 234, 345 (S.D.N.Y. 2004)(citing *Ramirez v. New York City Off-Track Betting Corp.*, No. 93-CV-0682, 1997 WL 160369, at *2 (S.D.N.Y. 1997)) "as well as on evidence submitted by the parties." *Stirrat v. Ace Audio/Visual, Inc.*, No. CV-02-2842, 2007 WL 2229993, at *2 (E.D.N.Y. 2007)(citing *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)).

In addition, the district court "may adjust th[e] base hourly rate to account for . . . case-specific variables." *Arbor Hill,* 493 F.3d at 111-112.  Factors to consider include, but are not limited to, "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side. . .), the timing demands of the case, [and] whether the attorney had an interest . . . in achieving the ends of the litigation . . ." *Id.* at 12.  The size of the firm may also be considered as a factor in determining the hourly rate, "primarily due to varying overhead costs." *Cioffi v. New York Community Bank,* 465 F.Supp.2d 202, 219 (E.D.N.Y. 2006).

In the Southern District, awarded rates have ranged from $250 to over $425 for experienced civil rights attorneys.  *See,*

*e.g., Heng Chan*, 2007 WL 1373118, at *4 (awarding attorney with fifteen years experience $400 per hour); *Kuper v. Empire Blue Cross and Blue Shield*, CV-99-1190, 2003 WL 23350111, at *9-10 (S.D.N.Y. Dec. 18, 2003) (lead attorney of small firm in civil rights case awarded $425 an hour) *Access 4 All, Inc. v. Park Lane Hotel, Inc.*, No. CV-04 7174, 2005 WL 3338555, at *5 (S.D.N.Y. 2005)(awarding $350 per hour to an attorney with 20 years of experience); *Pascuiti v. New York Yankees*, 108 F.Supp.2d 258, 266 (S.D.N.Y. 2000) ("range of fees for 'seasoned civil rights litigators,' particularly those in small firms, is between $200/hr and $300/hr"); and *Cowan v. Ernest Codelia, P.C.*, No. CV-98-5548, 2001 WL 30501, at *10 (S.D.N.Y. 2001) (awarding a sole practitioner who had been an "active civil rights litigator for many years" an hourly rate of $250), *aff'd*, 50 Fed. Appx. 36 (2d Cir. 2002).  Junior associates have been awarded hourly rates upwards of $125.  *See, e.g, Marisol A. ex rel. Forbes v. Giuliani*, 111 F.Supp.2d 381, 386 (S.D.N.Y. 2000)(finding reasonable rate of $130-$150 for attorneys with one to three years of experience); and *Tlacoapa v. Carregal*, 386 F.Supp.2d 362, 370 (S.D.N.Y. 2005)($125/hour for junior attorney at small firm of three full-time attorneys).   In addition, paralegal time is reasonably compensated at an hourly rate over $100 in the Southern District. *See e.g., Access 4 All,* 2005 WL 3338555, at *5(awarding paralegal hourly rate of

$115); *Morris*, 343 F.Supp.2d at 248(allowing paralegal rate of $125/hour in civil rights case).

Defendant argues that plaintiff has not met her burden of establishing reasonable market rates because she has failed to submit evidence of rates charged by other civil rights attorneys of comparable experience.  Although such information would be helpful, the submitted attorney declarations and documentation of fees received in similar cases, as well as prior Southern District decisions, are adequate for the Court to determine whether the rates sought comport with Southern District rates.[5]

Before examining each of the three attorneys' declarations describing their requested rates and skill level, I note that this case has been in litigation for nearly six years.  There was a protracted period of discovery that spanned nearly four years, summary judgment and judgment as a matter of law motions filed by both parties, and two trials.  The first trial lasted six days, involved the testimony of multiple witnesses, and resulted in a mistrial when the jury could not reach a verdict. The second trial lasted five days and involved the examination

---

[5] The Second Circuit has cautioned against the reliance on precedent only in scenarios where the prevailing party has submitted sufficient evidence on the prevailing market rate. *See Farbotko*, 433 F.3d at 208-210. Here, it is appropriate to consider precedent, because plaintiff's attorneys rely on precedent in support of their application and have only provided documentation of their own fees in prior cases.

of 13 witnesses. The defendant was represented by two experienced litigators throughout the course of this action. I bear these factors in mind in considering the hourly rates requested by each of plaintiff's attorneys.

Lead attorney Gregory Antollino is a sole practitioner. He has been practicing law since 1993 and has been in private practice since March 1995. Employment discrimination cases represent approximately forty percent of his practice and he has represented approximately 225 employment plaintiffs, twenty-five of whom were in the Eastern District. He is a member of the National Employment Lawyer's Association. Antollino Decl. ¶¶ 5-8.

Attorney Antollino states that all of his employment and civil rights cases are taken on a contingency basis. For the remaining legal malpractice and criminal cases that he handles, he states that he has charged hourly rates of $275 in 2002 and 2003; $300 between 2004 and 2006; and $325 in 2007. Although Attorney Antollino does not provide evidence of the rates charged by other civil rights attorneys for similar work performed in the Southern District, he has submitted a Southern District case in which he was awarded an hourly rate of $275 for work completed between 2002 and 2005. *See D'Ascoli v. Roura & Melamed*, No. CV-02-2685 (S.D.N.Y. 2005); Plaintiff Exhibit [Pl. Exh.] B; *see also* Declaration of Gregory Antollino

submitted in support of *D'Ascoli* Motion for Fees [D'Ascoli Decl.], Pl. Exh. C.  Accordingly, the Court awards an hourly rate of $275 for the work performed between 2002 and 2005. Given that Antollino's requested rates for 2006 onwards comport with the prevailing rates in the Southern District for civil rights attorneys of his level who are sole practitioners, the Court awards an hourly rate of $300 for the work performed in 2006, and $325 for the work performed in 2007 and 2008.

Attorney Jason Baxter graduated law school in 2004 and was admitted to the Bar of the State of New York, First Department, in May 2005.  He has been self-employed since 2006. Approximately twenty percent of his practice is in the area of employment law.  Declaration of Jason Baxter, ¶¶ 2-4.  Attorney Baxter requests an hourly rate of $100 for work completed prior to his admission to the Bar, $150 after his admission in 2005, and $175 for work completed in 2007.  He requests $100 per hour for paralegal work performed.[6]  Given Attorney Baxter's experience and the prevailing rates in the Southern District, the Court awards an hourly rate of $100 while he was awaiting admission, $150 after his May 2005 admission, $175 for 2007, and $100 for paralegal work.

---

[6] In support of his requested fees, Baxter cites to an award of an hourly rate of $150 for work performed in *D'Ascoli*.  Baxter Decl. ¶ 1. However, the *D'Ascoli* decision awards Baxter an hourly rate of $130 for work that appears to have been completed prior to his admission in May 2005. *See D'Ascoli v. Roura & Melamed*, No. CV-02-2685 (S.D.N.Y. 2005)

-12-

Attorney Victor Marshall has been practicing law since
1994 in California.  In addition to maintaining his own
practice, Attorney Marshall has taught a legal research and
expert testimony applications class at Loma Linda University,
California, and served as a pro tempore judge in San Bernadino
and Riverside counties, California.  Although Attorney Marshall
has significant trial experience, having participated in
approximately 70 trials, his practice has primarily focused on
criminal law.  Declaration of Victor Marshall, ¶¶ 2-4.  Aside
from this case, the Court is not aware of any experience that
Marshall has had in the area of employment law.  Attorney
Marshall requests an hourly rate of $300.  Given his extensive
trial practice experience, but lack of employment law
knowledge, Marshall should be compensated at a rate less than
Antollino.  Accordingly, he will be awarded an hourly rate of
$275.

*Hours Expended*

"[A]ny attorney ... who applies for court-ordered
compensation ... must document the application with
contemporaneous time records." *New York State Ass'n for
Retarded Children, Inc., v. Carey*, 711 F.2d 1136, 1148 (2d Cir.
1983).  These records should specify, for each attorney, the
date, the hours expended and the nature of the work. *Id.*
However, "[i]t is not required that counsel describe in great

detail how billable time was spent; it is sufficient to
identify the general subject matter of time expenditures."
*Aiello v. Town of Brookhaven,* No. 94-CV-2622, 2005 WL 1397202,
at *2 (E.D.N.Y. 2005)(citing *Perdue v. City Univ. of New York*,
13 F.Supp.2d 326, 345 (E.D.N.Y. 1998)).

Plaintiff's counsel has submitted contemporaneous time
records in support of this fee motion.  Each attorney has
submitted a chart that includes the date on which services were
performed, a description of the tasks performed, the number of
hours expended on the tasks, and the rate charged by each
attorney.

Attorney Antollino has billed 482.2 hours and seeks
$147,373.90 in fees for his services.[7]  Defendant argues that
Antollino's fees should be reduced for (1) his failure to
properly account for travel time and (2) his use of block
billing.

 Travel time is reimbursed at one-half of the determined
hourly rate. *Cioffi*, 465 F.Supp.2d at 219.  Antollino, as well
as his colleagues, each recorded 1.1 hours of roundtrip
courthouse travel time.  Given that the attorneys traveled
together for their court appearances, Antollino Reply Decl. ¶

---

[7] Antollino appears to have calculated his fees incorrectly.  Based on
the number of hours he has billed and his hourly rates for each period of
time, he has requested $147,373.90 in fees, when he in fact is entitled to
seek $154,873.90 in fees.

9, it is reasonable for each of the attorneys to have recorded the same travel time on the same dates. However, Antollino's requested fees are reduced by $510.60 because he failed to bill travel time at the appropriate one-half of his hourly rate on the following dates: 8/22/03, 9/30/03, 10/14/03, 10/27/03, and 10/30/03.

"Commingling tasks within one time entry may impede[] the court's efforts to evaluate the reasonableness of any of the listed activities." *Soler v. G & U Inc.*, 801 F.Supp. 1056, 1061 (S.D.N.Y. 1992). The remedy for such vague entries is to apply percentage cuts in the attorneys fees. *See Aiello*, 2005 WL 1397202, at *3 (collecting cases).

At various points over the course of this action, Attorney Antollino grouped individual, but related tasks, into single billing entries. For example, on 2/3/06, 2/6/06, 2/7/06, 2/8/06, 2/9/06, 2/10/06, 2/13/06, 2/14/06, 2/15/06, 2/16/06, and 2/17/06, Antollino grouped together all tasks performed while working on plaintiff's opposition to defendant's motion for summary judgment. On 4/27/07, 4/28/07 and 4/29/07, Antollino grouped together all tasks performed in preparation for the first trial and again on 11/27/07, 11/28/07, 11/29/07, 11/30/07, 12/1/07 he grouped together all tasks performed in preparation for the second trial. Given that the individual tasks grouped together were performed in connection with the

same end product, I find that Antollino's records adequately describe the general subject of his time expenditures. I also find that the number of hours spent on each category of work to be reasonable.[8]

With regards to the time spent at trial, I note that for both trials Antollino grouped together his trial attendance with trial preparation.[9] However, because the number of hours spent at each trial are known, I am able to determine the number of hours spent on trial preparation. Based on my review of the records, I find that the number of trial preparation hours billed over the course of both trials is reasonable. Accordingly, I award a total of $153,083.60 fees for the work performed by Attorney Antollino.

Attorney Baxter has billed 136.3 hours for a total of $20,395.60. Having reviewed his billing records, I find that the number of hours billed are reasonable[10] and that Baxter

---

[8] I note that for work performed in connection with post-trial motions, Attorney Antollino grouped all of the dates and tasks into three entries dated 5/19/07 to 5/25/07, 6/1/07 to 6/7/07, and 6/10/07 to 6/15/07. Antollino also grouped together tasks into single entries dated 5/20/03 to 5/22/03, 4/16/07 to 4/17/07, 4/27/07 to 4/28/07, 7/30/07 to 7/31/07, 12/7/97 to 12/9/07, 12/11/07 to 12/12/07, and 12/15/07 to 12/21/07. Even though he does not break down the number of hours billed each day, his method does not impede one's ability to determine the reasonableness of the total number of hours expended.

[9] For the first trial, the 4/30/07, 5/1/07, 5/7/07, and 5/9/07 entries group together trial attendance and trial preparation. For the second trial, the 12/3/07, 12/4/07, 12/5/07, and 12/7/07 entries group together trial attendance and trial preparation.

[10] I note that on a few occasions, 4/14/05, 4/17/07, 4/26/07, 4/30/07, and 5/7/07, Baxter combined two discrete tasks in one time entry. However, by comparing these entries to other entries for similar discrete tasks, I am able to determine that the number of hours charged for the combined entries is

charged paralegal rates where appropriate and billed half of
his hourly rate for travel.  Accordingly, I award $20,395.60
for Attorney Baxter's work on this action.

Attorney Marshall seeks compensation for 81.1 hours.
Defendant opposes the number of hours expended by Marshall as
excessive and vague.

The Court may exclude hours that are found to be
excessive from the calculation of fees, *Perez v. Jasper
Trading, Inc.,* No. 05-CV-1725, 2007 WL 4441062, at *10
(E.D.N.Y. 2007), or impose an across the board percentage cut.
*See In re "Agent Orange" Products Liab. Litig.,* 818 F.2d 226,
237-238 (2d Cir. 1987).

Defendant argues that because Marshall was brought in
shortly before the re-trial, he had to spend time to "get up to
speed" and that his efforts were duplicative of the work that
Attorney Baxter had performed in preparation for the first
trial.  Defendant also appears to argue that plaintiff did not
need two attorneys for the re-trial.

I do not find that the time Marshall spent to review the
case was duplicative.  Given the approximately seven months
that had passed between the first and second trials and the
number of exhibits and witnesses involved, it would be
reasonable for any attorney, including those who had worked on

---

reasonable.

the first trial, to spend time reviewing the transcripts of the first trial. In fact, I would expect that counsel would use the transcripts and the time between trials to work on improving the marshaling of evidence, including re-casting direct examinations. Therefore, I do not find Attorney Marshall's efforts to be duplicative of Attorney Baxter's efforts.

Turning to defendant's claim that Attorney Marshall duplicated Attorney Antollino's efforts, I note that "[i]t is reasonable and somewhat customary, that a trial attorney be assisted in the preparation and trial of the case. While some trial lawyers work unassisted-and prefer to do so-it is not unreasonable to have assistance in the preparation of witnesses and the handling of exhibits and transcripts during the trial." *Lynch v. Town of Southampton*, 492 F.Supp.2d 197, 213 (E.D.N.Y. 2007); *see also Carey*, 711 F.2d at 1146 (prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney into the court to assist with trial). I find that it was appropriate for the plaintiff to have two attorneys representing her at trial, particularly in light of the fact that the defendant had two attorneys representing it throughout this action. Marshall played an active role during the trial by conducting examinations, generally assisting Antollino and conducting the closing summation. Accordingly, I find that

Marshall's time was not duplicative.

Defendant also argues that Marshall's requested hours should be reduced because his entries are too vague. Although Marshall's entries are less detailed than his colleagues' records, I find that they are adequate for the determination of their reasonableness. Marhsall's billing entries can be grouped into four categories: trial preparation, trial attendance, post-trial work, and travel time. Although Marshall has combined the trial preparation and trial attendance entries on the days that the trial was held, I am able to determine the number of hours billed to each category. Since 6.5 hours were spent in court on trial for five days, the total amount of time for trial attendance is 32.5 hours. The total time billed to trial preparation is 39.1 hours. 39.1 hours is a reasonable amount of time to spend on trial preparation. The post-trial work amounts to 1 hour of time, which is also reasonable. Travel time accounts for 7.6 hours, of which 2.1 hours are deducted for travel to and from the airport. While the Court recognizes plaintiff's right to retain counsel of her own choice, she has failed to explain the need for out-of-state counsel when presumably, a local attorney with similar trial experience could be located. *See Sizemore v. Electronic Pre-Press Systems, Inc.*, CV-90-5042, 1993 WL 535175, at *3(S.D.N.Y. 1993)(denying attorneys' travel time

because defendants chose to be represented by attorneys located in Rochester rather than New York City).  Accordingly, Marshall will be compensated as follows: $11,000 for trial preparation, $8,937.50 for trial attendance, $275 for post-trial work, and $756.25 for travel, totaling $20,968.75 in fees.

*Costs*

Plaintiff seeks expenses in the amount of $4,501.  Costs are ordinarily recoverable if they are "incidental and necessary to the litigation."  *Tips Exports, Inc., v. Music Mahal, Inc.,* No. 01-CV-5412, 2007 WL 952036, at * 11 (E.D.N.Y. 2007).  Costs relating to filing fees, process servers, postage, travel, and photocopying are routinely made.  *See id.* Plaintiff provides an itemized list of the expenses requested, including the date, and nature of the expense, and the amount requested.  The Court finds plaintiff's requests for expenses to be reasonable, except for the reimbursement request for Attorney Marshall's roundtrip airfare and airport cabfare in the amount of $266 and $60, respectively.  Marshall's travel expenses are denied for the same reason as his request for travel fees.  Accordingly, plaintiff is awarded $4,175 in costs.

**CONCLUSION**

For the reasons set forth above, plaintiff is awarded $194,447.95 in attorneys' fees and $4,175 in costs.[11]  The Clerk is directed to transmit a copy of the within to the parties and the magistrate judge.

SO ORDERED.

Dated:    Brooklyn, New York
          March 4, 2008


By:       /s/ Charles P. Sifton (electronically signed)
                    United States District Judge

---

[11] This award takes into consideration the issue of proportionality. Plaintiff has been awarded $150,00 in compensatory damages, with an additional award of economic damages in the range of approximately $80,000 plus the restoration of lost pension credits.  The fact that the attorney fees are nearly as high as the damages award is reasonably accounted for by the fact that this case had to be tried twice.