UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

Rosetta Simmons,

                Plaintiff,

    -against-

New York City Transit Authority,

                Defendant.

MEMORANDUM OPINION
AND ORDER (CPS)(RLM)

CV-02-1575

---------------------------------------X

SIFTON, Senior Judge.

Plaintiff Rosetta Simmons ("Simmons") commenced this action on March 13, 2002 against her employer, defendant New York City Transit Authority ("the Transit Authority") claiming that the Transit Authority discriminated against her on the basis of her disability in violation of: (1) the American with Disabilities Act; (2) the Rehabilitation Act of 1973; (3) New York State Human Rights Law; and (4) New York City Human Rights Law. A jury trial took place between December 3, 2007 and December 10, 2007. The jury returned a verdict in favor of plaintiff and awarded her $150,000 in compensatory damages. Presently before this Court is defendant's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 or in the alternative, a new trial pursuant to Federal Rule of Civil Procedure 59. For the reasons set forth below, defendant's motion is denied.

## Background

Familiarity with the facts of the case is presumed based on

the prior proceedings before the undersigned. What follows is a recent procedural history of the parties' post-trial motions.

A jury trial was conducted from April 30, 2007 to May 11, 2007, resulting in a mistrial when the jury failed to reach a verdict.

A re-trial of this case commenced on December 3, 2007. At the close of plaintiff's case in chief, defendant moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. Transcript of December 2007 Trial ("Tr.") 468-74. Decision was reserved on the motion. Defendant renewed its motion at the close of its case, Tr. 691-92, as well as at the end of plaintiff's rebuttal case. Tr. 695-96.

On December 10, 2007, the jury reached a verdict in favor of plaintiff on all of her claims. The jury awarded plaintiff $150,000 in compensatory damages.

After the jury reached a verdict in favor of plaintiff, the parties entered into a stipulation in connection with the pensionable gross lost wages for the period January 16, 2001 through March 22, 2003, which I "so ordered" on March 3, 2008. Pursuant to the stipulation, gross wages in the amount of $97,099 are due to Simmons. Pension benefits are to be calculated by the New York City Employee Retirement System (NYCERS) and pension contributions are to be deducted from the gross lost wages of $97,099. The gross wages are to be reduced by the $28,350 in

unemployment compensation that Simmons received resulting in a net back pay loss of $68,749. The net back pay loss is subject to payroll deductions. Prejudgment interest in the amount of $12,202 was calculated based on the net back pay loss.

The parties disputed whether plaintiff was entitled to compensation for lost fringe benefit time, including sick days, personal days, holidays, and vacation days. This Court reached a decision on this issue in a memorandum opinion and order denying plaintiff an award of such benefits. *See Simmons v. New York City Transit Authority*, 2008 WL 630056 (E.D.N.Y. March 4, 2008).

On March 4, 2008, this Court awarded plaintiff $194,447.95 in attorneys' fees and $4,175 in costs. *Simmons v. New York City Transit Authority,* 2008 WL 630060 (E.D.N.Y. March 4, 2008).

## Discussion

*Rule 50 Standard*

Under Federal Rule of Civil Procedure 50, if a party files a motion for judgment as a matter of law after an adversary has been fully heard on an issue during trial, and the court does not grant the motion, the party may renew the motion no later than 10 days after the entry of judgment. Fed. R. Civ. P. 50(a)-(b). Once a motion has been renewed,

> the court may: (1) allow judgment on the verdict, if the
> jury returned a verdict; (2) order a new trial; or (3)
> direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). "In assessing whether judgment as a

matter of law is proper, the court must view all of the evidence and draw all inferences in the light most favorable to the non-moving party." *Norville v. Staten Island University Hospital*, 196 F.3d 89, 95 (2d Cir. 1999). However, "[t]he court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Jarvis v. Ford Motor Co.,* 283 F.3d 33, 43 (2d Cir. 2002)(internal quotation marks and citation omitted). Judgment as a matter of law should be granted "only when . . . there can be but one conclusion as to the verdict that reasonable [people] could have reached." *Weldy v. Piedmont Airlines,* 985 F.2d 57, 59-60 (2d Cir. 1993)(internal quotation marks and citation omitted).

*Defendant's Claims*

Defendant argues that plaintiff failed to establish as a matter of law the essential elements of a disability discrimination claim under federal, state, or local law.[1]

---

[1] Relying on the New York City Council's 2005 passage of the Local Civil Rights Restoration Act, plaintiff argues that defendant has waived its argument on the local law claim by failing to address it separately from the federal and state claims.

The 2005 Act amended several provisions of the New York City Human Rights Law (NYCHRL), emphasizing that the NYCHRL should be "construed independently from similar or identical provisions of New York state or federal statutes." N.Y.C. Local Law No. 85 § 1 (Oct. 3, 2005). The amended code directs that the "provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed." N.Y.C. Admin. Code § 8-130.

Although district and state courts have noted the above distinction, they have continued to rely on interpretations of federal and state statutes when analyzing NYCHRL claims. *See e.g. Morel v. ABM Co.,* No. 02-CV-3564, 2006

The failure to provide a reasonable accommodation for a disability constitutes discrimination. *See* 42 U.S.C. § 12112(b)(5)(A); *Stone v. City of Mount Vernon*, 118 F.3d 92, 96-97 (2d Cir. 1997), *cert. denied*, 522 U.S. 1172 (1998).[2] In order to prove disability discrimination under this theory, the plaintiff bears the burden of establishing that (1) she is disabled within the meaning of the statute; (2) the employer had notice of her disability; (3) she could perform the essential functions of the job with reasonable accommodation; and (4) the employer refused to make the accommodation. *Parker*, 204 F.3d at 332 (citing *Stone*, 118 F.3d at 96-97); *see also Graves v. Finch Pruyn & Co. Inc.*, 457 F.3d 181, 184 (2d Cir. 2006)(citing *Rodal v. Anesthesia Group of Onondaga PC,* 369 F.3d 113, 118 (2d Cir. 2004)).

(1) Disability Within the Meaning of the Federal Statutes

Defendant argues that plaintiff failed to prove that the Transit Authority regarded her as disabled within the meaning of

---

WL 37710061 (S.D.N.Y. 2006); *Jordan v. Bates Adver. Holdings, Inc.*, 11 Misc.3d 764, 771 (N.Y.Sup.Ct. 2006)(noting that case law interpreting federal and state law should "merely serve as a base for the New York City Human Rights Law, not its ceiling" and then applying the *McDonnell Douglas* burden shifting framework to an employment discrimination claim); *Pugliese v. Long Island Railroad,* No. 01-CV-7174, 2006 WL 2689600, at *11 (E.D.N.Y. 2006). I am persuaded that federal and state case law remain useful tools for the interpretation of NYCHRL claims and note that both parties have relied on federal case law in connection with plaintiff's NYCHRL claim. Accordingly, I consider defendant's argument on all three claims.

[2] Aside from the definition of a disability, the elements of a disability discrimination claim under federal, state, and city law are the same. *See Parker v. Columbia Pictures,* 204 F.3d 326, 331 n.1 (2d Cir. 2000); *Shannon v. New York City Transit Authority,* 332 F.3d 95, 103-104 (2d Cir. 2003); *see also Constance v. Pepsi Bottling Co. of NY*, No. 03-CV-5009, 2007 WL 2460688, at *33 (E.D.N.Y. 2007).

the federal statutes.

Under the ADA,[3] a disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The Second Circuit has held that

> "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel University*, 94 F.3d 102, 109 (3d Cir. 1996). Plaintiff must show that defendants perceived his [or her] impairment as substantially limiting the exercise of a major life activity.

*Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 153 (2d Cir. 1998).

The EEOC defines "substantial limitation" as "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same life activity." 29 C.F.R. § 1630.2(j)(1). The regulations advise

---

[3] I consider plaintiff's ADA and Rehabilitation Act claims together because the statutes "impose identical requirements." *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

that the following factors should be considered in determining whether an individual is viewed as substantially limited in a major life activity:

> (i) The nature and severity of the impairment;
> (ii) The duration or expected duration of the impairment; and
> (iii) The permanent or long term impact, or the expected or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). A determination whether a person is substantially limited in her ability to perform a major life activity is fact specific. *See Mazza v. Bratton,* 108 F.Supp.2d 167, 174 (E.D.N.Y. 2000), *aff'd* 9 Fed. Appx. 36 (2d Cir. 2001), *cert. denied* 534 U.S. 887 (2001).[4]

Based on the evidence and testimony presented, it was reasonable for the jury to determine that defendant viewed plaintiff as substantially limited in the major life activity of waste elimination.[5] There was testimony that the Transit

---

[4] At the first trial, I ruled that the elimination of waste is a major life activity. I also held that Simmons had failed to present sufficient evidence that she was regarded as substantially limited in the major life activity of working. At the close of plaintiff's case on re-trial, defendant again raised the argument that the elimination of waste is not a major life activity and that plaintiff had not sustained its burden of showing that she was regarded as substantially limited in the major life activity of working. I did not charge the jury that working is a major life activity, but I did instruct them that the elimination of waste is a major life activity as applied to the facts of this case. By failing to renew its motion on the ground that waste elimination is not a major life activity defendant has waived this argument.

[5] The Transit Authority's reliance on *Crawford v. New York Life Ins. Co.*, *Sacay v. Research Foundation of City University of New York*, and *Teachout v. New York City Dept. of Educ.*, in support of its argument is misplaced. A determination as to whether plaintiff was viewed as substantially limited in the major life activity of waste elimination is fact-specific and each of the cases cited by defendants involves facts that are distinguishable. *See Crawford*, No. 04-CV-1853, 2006 WL 2792779 (E.D.N.Y. 2006); *Sacay*, 193

Authority regarded plaintiff's IBS symptoms as so frequent and of such intensity that she could not drive a train safely and that passenger service would be disrupted because she could not control her bowel movements.  There was also testimony that the Transit Authority viewed her symptoms as so severe that she required a controlled substance for treatment.  In addition, there was evidence that the Transit Authority viewed her symptoms as long-term in nature based on the transfer to restricted work permanent status well before the one year that employees are permitted to remain in restricted work temporary status.  Accordingly, it was reasonable for the jury to determine that the Transit Authority regarded Simmons as disabled within the meaning of federal law.

(2) Essential Functions

Defendant argues that the evidence in the record proves that plaintiff's IBS symptoms rendered her unfit to perform the essential functions of the train operator position.

"Essential functions are . . . those duties which are fundamental to the position in question . . ." *Picinich v. United Parcel Service,* 321 F.Supp.2d 485, 503 (N.D.N.Y. 2004)(internal citation omitted); 29 C.F.R. § 1630.2(n)(1). "[C]onsideration shall be given to the employer's judgment as to

---

F.Supp.2d 611 (E.D.N.Y. 2002); *Teachout*, No. 04-CV-945, 2006 WL 452022 (S.D.N.Y. 2006).  Accordingly, these cases have no bearing on the Court's consideration of whether there was enough evidence to support a reasonable determination that the Transit Authority regarded plaintiff as disabled.

what functions of a job are essential, and if an employer has
prepared a written description before . . . this description
shall be considered evidence of the essential functions of the
job." 42 U.S.C. § 12111(8).

Plaintiff presented sufficient evidence to support the
jury's reasonable determination that she was able to meet the
essential functions of the train operator position, with or
without an accommodation. There was testimony that the Transit
Authority's medical department did not consider IBS to be a
disqualifying condition for train operators and that a MAC
physician had previously found that plaintiff could put herself
out of service if she developed cramps and diarrhea while
operating a train. There was testimony that Simmons was not
taking Donnatal at the time of her removal, that she was not
required to take the medication, and that she needed more
frequent bathroom breaks as an accommodation.

In addition, there was testimony that train operators are
exposed to frequent distractions while driving trains and that a
Shuttle train operator may take bathroom breaks because there is
always an extra operator on duty. A Transit Authority
psychologist also found that plaintiff could handle the stress
of the train operator position. Accordingly, viewing the facts
in the light most favorable to plaintiff, it was reasonable for
the jury to determine that she was a qualified individual able

to perform the essential functions of the train operator position.

(3) Change in Work Status from Temporary to Permanent Restricted

An employee sustains an adverse employment action if he or she endures a "materially adverse change in the terms and conditions of employment." *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir. 1997).   A materially adverse change may include "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

Defendant argues that changing plaintiff's work status from temporary to permanent restricted was not an adverse employment action because the Transit Authority was not obliged to maintain her position indefinitely and the change in status allowed plaintiff to be reclassified.[6]

Although "the ADA does not require that a position be kept 'open indefinitely' while an employee convalesces," *Mazza,* 108 F.Supp.2d at 175 (quoting *Parker*, 204 F.3d at 338), sufficient evidence was presented to support the jury's reasonable determination that the change in status was an adverse action.

---

[6] As the plaintiff correctly notes, defendant failed to raise this argument at trial.  Tr. 468-472. By failing to raise this argument at the time of its initial motion, defendant has waived this claim.  Nonetheless, because both parties have briefed the issue and for the sake of completeness, I address it.

Not only does the Transit Authority's collective bargaining agreement allow employees to remain in temporary restricted work status for one year, but evidence was also presented that it takes longer to be reinstated to one's prior position after reclassification, and that reclassification results in the loss of pay and seniority. Accordingly, viewing the facts in the record in the light most favorable to plaintiff, it was reasonable for the jury to determine that the transfer to permanent restricted status was an adverse employment action.

(4) Reasonable Accommodation Request

Generally, "the initial burden of requesting an accommodation is on the employee and it is only after such a request has been made that the employer must engage in the 'interactive process' of finding a suitable accommodation." *Felix v. New York City Transit Authority*, 154 F.Supp.2d 640, 656-57 (S.D.N.Y. 2001)(quoting *Stola v. Joint Industrial Board*, 889 F.Supp. 133, 135 (S.D.N.Y. 1995)). However, this rule does not apply "where the disability is obvious or otherwise known to the employer without notice from the employee." *Felix,* 154 F.Supp.2d at 657; *see also Niemczura v. Coral Graphics Services, Inc.*, 04-CV-5452, 2005 WL 3113424, at *5 (E.D.N.Y. 2005).

Defendant argues that plaintiff failed to request a reasonable accommodation in a timely manner and that the accommodations requested were not reasonable. Although

plaintiff did not request an accommodation prior to the reclassification interview, she testified that she never saw any signs about the Transit Authority's accommodations policy and that she was not aware of the process for requesting an accommodation. Accordingly, it was reasonable for the jury to determine that plaintiff's request for an accommodation at the reclassification examination was timely.[7]

With respect to the accommodations requested, there was testimony and documentary evidence presented that plaintiff had enough time to access a bathroom while on the shuttle and that she had been assigned to yard duty before. There was also testimony presented that reclassifications are made without consideration of the availability of a position, and if an opening is not available at the time of reclassification, an employee may be placed on a waiting list for six months. Documentary evidence was also offered that the property protection agent positions were available shortly after she was assigned to the Castleton Depot. Accordingly, viewing the facts in the light most favorable to plaintiff, there was sufficient evidence to support the jury's determination that the requested accommodations were reasonable.

---

[7] Even if Simmons had failed to request an accommodation in a timely manner, defendant had an obligation to initiate the interactive process as it was aware of plaintiff's medical condition. Had the Transit Authority initiated the interactive process, a determination about the reasonable accommodations available to plaintiff could have been made prior to the reclassification examination.

<u>(5) Reclassification to Bus Cleaner Position</u>

Reassignment to an inferior position does not constitute a reasonable accommodation where a comparable position, for which the employee was qualified, is vacant. *See Norville,* 196 F.3d at 99. A reassignment is considered inferior if such a position "involve[s] a significant diminution in salary, benefits, seniority, or other advantages that the employee possessed in her former job." *Id.* Reassignment is also not a reasonable accommodation if an employee is not qualified for that position. *Id; EEOC Interpretative Guidelines on Title I of the American with Disabilities Act*, 29 C.F.R. Pt. 130 App. § 1630.2.

Defendant argues that reassignment to the bus cleaner position was a reasonable accommodation because plaintiff showed no signs of bursitis at the time of reclassification.

Evidence was introduced that the Transit Authority was aware of plaintiff's history of bursitis, that Simmons reminded Dr. Isenberg of her limitation, and that on March 20, 2001, prior to the reclassification recommendation being made, Simmons gave the Transit Authority a doctor's note stating that she was restricted from heavy lifting. Plaintiff gave the Transit Authority an additional note in June 2001. Viewing the facts in the light most favorable to plaintiff, it was reasonable for the jury to determine that the transfer to the bus cleaner position was not a reasonable accommodation in light of plaintiff's

history of bursitis.

Defendant also argues that the assignment to the bus cleaner position "was a failed experiment, undertaken in good faith so far as appears and not obviously doomed to fail from the start . . ." *E.E.O.C. v. Humiston-Keeling, Inc.,* 227 F.3d 1024 (7th Cir. 2000).

The Transit Authority assigned plaintiff to a bus depot that did not have a women's bathroom readily accessible, even though the reclassification form stated that she needed access to the bathroom. There was also testimony that supported the inference that defendant did not have a mechanism in place to take into account the MAC's recommendation that Simmons be provided easy access to a bathroom in her new position. Viewing the facts in the light most favorable to plaintiff, it was reasonable for the jury to determine that the reassignment was not made in good faith. Accordingly, the jury reasonably determined that reassignment to the bus cleaner position was not a reasonable accommodation.

(6) Application of New York City Human Rights Law

Defendant renews its argument that pursuant to the 2000 amendment of New York State Public Authorities Law § 1266(8), New York City Human Rights Law, Admin. Code § 8-101 *et seq.*, is not applicable to the Transit Authority, a state-created public authority performing a "governmental function" as the operator

of transit facilities.

Section 1266(8) states that:

Except as hereinafter specially provided, no municipality
or political subdivision, including but not limited to a
county, city, village, town or school or other district
shall have jurisdiction over any facilities of the
authority and its subsidiaries, and New York city transit
authority and its subsidiaries, or any of their activities
or operations.

McKinney's Public Authorities Law § 1266(8)(as amended on May
15, 2000).

Other districts courts within the Second Circuit have
interpreted section 1266(8) as only exempting the Transit
Authority from the reach of local laws that interfere with the
accomplishment of the Transit Authority's purpose to provide
public transportation. *See e.g., Everson v. New York City Tr.
Auth.,* 216 F.Supp.2d 71, 81 (E.D.N.Y. 2002); *Bogdan v. New York
City Tr. Auth.*, No. 02-CV-9587, 2005 WL 1161812, at *6 (S.D.N.Y.
2005); *Muhammad v. New York City Tr. Auth.*, 450 F. Supp.2d 198,
206 (E.D.N.Y. 2006); *Stamm v. New York City Transit Authority,*
No. 04-CV-2164, 2006 WL 1027142, at *16 (E.D.N.Y. 2006); and
*Matos v. MTA Bridges and Tunnels,* No. 04-CV-768, 2008 WL 858995,
at *10-11 (E.D.N.Y. 2008).[8]  I conclude that section 1266(8)

---

[8] In support of its argument, defendant cites one New York state case,
*Kim Tang v. New York City Tr. Auth.*, 16 Misc.3d 703 (N.Y. Sup. 2007), in which
a court held that the Transit Authority was not bound by the NYCHRL under
section 1266(8).  However, at least two other New York state courts have
disagreed with the holding of *Tang,* and instead have adopted the holding of
the district courts in *Everson*, *Bogdan*, and *Muhammad*.  *See Bumpus v. New York
City Transit Authority*, 18 Misc.3d 1131(A), 2008 WL 399147, at *4 (N.Y. Sup.
2008); *Parker v. Metropolitan Transp. Authority*, 851 N.Y.S.2d 65, 65 (N.Y.

does not shield the Transit Authority from compliance with local human rights laws, because those laws do not interfere with the Transit Authority's purpose. Accordingly, New York City Human Rights Law applies to the Transit Authority with respect to plaintiff's disability discrimination claim.

*Rule 59 Standard*

Rule 59 provides that a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in the in federal court." Fed. R. Civ. P. 59(a). The Court of Appeals has held that a motion for a new trial may be granted when "the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice," *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005)(internal quotation marks and citations omitted), or the verdict is "egregious." *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998)(quoting *Dunlap-McCuller v. Reese Org.,* 980 F.2d 153, 158 (2d Cir. 1992)). A motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict. The court "is free to weigh the evidence, and need not view it in the light most favorable to the verdict winner." *DLC Management Corp.*, 163 F.3d at 134 (citing *Song v. Ives Labs, Inc.,* 957 F.2d 1041, 1047 (2d Cir. 1992)). However, "[w]here the resolution of the issues depended

Sup. 2007).

on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *U.S. v. Landau,* 155 F.3d 93, 105 (2d Cir. 1998)(quoting *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir. 1992)).

*Defendant's Claims*

(1) Weight of the Evidence

Defendant argues that a new trial is warranted because the verdict goes against the weight of the evidence.  According to the Transit Authority, plaintiff was not a credible witness when compared to her treating doctors, Dr. Daniel and Dr. Mosse, whose testimony revealed discrepancies in her testimony. Because defendant's argument depends on an assessment of witness credibility, setting aside the verdict on this ground is not appropriate.

Defendant also argues that plaintiff did not present evidence that the accommodations requested were reasonable and available.  Weighing the evidence discussed earlier, I conclude that the jury's determination on this issue was neither erroneous or egregious.

In addition, defendant argues that because the jury reached a verdict after deliberating for less than an hour, the jury's verdict was the result of sympathy, rather than a careful evaluation of the evidence.  Given that the trial lasted six

days during which thirteen witnesses testified at length and numerous exhibits were introduced into evidence, the jury had adequate time to absorb the facts of the case. Accordingly, the length of their deliberations is not a sufficient basis to overturn the jury's verdict. *See Fibermark, Inc. v. Brownville Specialty Paper Products, Inc*., 419 F.Supp.2d 225, 233-34 (N.D.N.Y. 2005); *U.S. v. Williams,* 283 F.Supp.2d 850, 857 (E.D.N.Y. 2003).

## (2) Preclusion of Line of Questioning on Cross-Examination

"A district court has wide discretion in controlling the admissibility of testimony and other evidence . . ." *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (citing *Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 619-20 (2d Cir. 1991); *George v. Celotex Corp*. 914 F.2d 26, 28 (2d Cir. 1990)).

Defendant argues that a new trial is required because of prejudicial error precluding the cross-examination of Dr. Daniel on his opinion as to whether plaintiff was medically fit to operate a train safely. During cross-examination, defendant asked three questions in succession, plaintiff objected to each of the three questions, and I sustained all three objections. The first question was "Did you disagree with what the Transit Authority did?" Tr. 150. I sustained plaintiff's objection because this was beyond the scope of Dr. Daniel's knowledge or expertise. *Id.* Defendant rephrased the question as "Do you

have an opinion one way or the other whether the Transit
Authority acted appropriately under its standards?" *Id.*
Defendant again rephrased and asked "Did you form an opinion,
Dr. Daniel, whether Ms. Simmons could continue operating a train
on the same assignment she had in 2001?" *Id.* I sustained the
objection and noted that the witness was a physician, not a
train operator and directed the defendant not to pursue the
subject further. *Id.*

Defendant argues that the precluded line of questioning was
necessary in order to ensure that the jury did not infer from
Dr. Daniel's statement "I never made an absolute statement, so
removing Ms. Simmons from her job as a train operator was never
absolutely necessary. . .," Tr. 120, that plaintiff could
operate a train safely. As plaintiff's treating physician, Dr.
Daniel was in a position to testify about plaintiff's symptoms,
treatment and need for accommodations. Because Dr. Daniel was
not a Transit Authority physician or an occupational health
expert, asking him for his opinion about the application of the
Transit Authority's safety standards was beyond the scope of his
knowledge and expertise. Given Dr. Daniel's testimony and the
medical records offered into evidence, there was no basis upon
which the jury could have inferred that Dr. Daniel had an
opinion about the application of the Transit Authority's safety
standards to plaintiff's situation. Accordingly, no error was

committed by precluding the above line of questioning.

(3) *Charge Error*

Defendant argues that this Court's jury charge on the requirement for the defendant to initiate the interactive process was prejudicial because it suggested that the Transit Authority could be held liable for failing to engage in the interactive process, even though there was no proof that the process would have yielded a result favorable to plaintiff.

The Court's charge to the jury was as follows:

> The employer is obligate[d] to engage in an interactive process with the disabled employee in order to determine whether the employee's disability can be accommodated such as meeting with the employee who requests an accommodation, requesting information about the employee's condition and the available accommodation and considering any request for accommodation made by the employee and available alternatives.

Tr. 769.

"The ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. New York State Department of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)(internal quotation marks and citation omitted). Although generally the employer's obligation to engage in the interactive process is triggered when the employee requests an accommodation, where the disability is obvious or otherwise known to the employer without the need for a request from the employee, the above rule does not apply. *See Felix*, 154

F.Supp.2d at 656; *see also Niemczura*, 2005 WL 3113424, at *5.

Plaintiff introduced evidence that the Transit Authority was aware of her condition, but that it failed to instruct her on how to request an accommodation or commence the process on its own, even though MAC physicians had determined that she required an accommodation. There was also sufficient evidence presented that a number of reasonable accommodations were available. Accordingly, instructing the jury about the defendant's obligation to engage in an interactive process was not prejudicial.

Defendant also argues that the Court applied the incorrect legal standard when charging the jury that a request for a transfer to a different job was a reasonable accommodation if the position became available within a reasonable period of time, rather than immediately.

The charge read to the jury was:

Where a plaintiff seeks reassignment to a comparable position, the plaintiff must come forward with evidence and persuade you by a preponderance of the evidence that the position [] was available, either immediately or within a reasonable period of time.

Tr. 772.

"[A]n employer who utilizes reassignment to meet the duty of reasonable accommodation for a current employee 'should reassign the individual *EEOC Interpretative Guidelines on Title I of the American with Disabilities Act* to an equivalent

position in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time.'" *Norville*, 196 F.3d at 99 (quoting *EEOC Interpretative Guidelines on Title I of the American with Disabilities Act*, 29 C.F.R. Pt. 1630 App. § 1630.2(o)); *see also Shannon v. New York City Transit Authority*, 332 F.3d 95, 104 (2d Cir. 2003). According to the EEOC, "[a] 'reasonable amount of time' should be determined in light of the totality of the circumstances." 29 C.F.R. Pt. 1630 App. § 1630.2(o).

Evidence was presented at trial that the Transit Authority's reassignment process was not completed immediately after an examination, that reassignments were made without consideration of the availability of a position, and that employees could remain on waiting lists for six months. Accordingly, this Court did not err by charging the jury that the position sought must be available within a reasonable period of time.

(4) Remittitur or New Trial on Damages

When deciding a Rule 59 motion, courts may grant a new trial in whole or limited to damages, or grant remittitur. *Raninone v. Potter,* 388 F.Supp.2d 120, 121 (E.D.N.Y. 2005)(citing *Tingley Sys. v. Norse Sys.*, 49 F.3d 93, 96 (2d Cir. 1995)). "Remittitur describes 'the process by which a court compels a plaintiff to choose between reduction of an excessive

verdict and a new trial.'" *Id.* at 121-22 (quoting *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir. 1990)).

Under federal law a jury verdict will not be disturbed unless the amount awarded shocks the conscience. *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990). Emotional distress awards greater than $100,000 for federal claims have been upheld by courts "in cases that generally contain evidence of debilitating and permanent alterations in lifestyle." *Raninone*, 388 F.Supp.2d at 124 (collecting cases).

Under New York law, the inquiry focuses on whether the damages "deviate[] materially from what would be reasonable compensation." *Cross v. New York City Transit Authority,* 417 F.3d 241, 258 (2d Cir. 2005)(quoting McKinney's CPLR § 5501(c)). "New York cases vary widely in the amount of damages awarded for mental anguish." *Id.* (quoting *Meacham v. Knolls Atomic Power Lab.,* 381 F.3d 56, 78 (2d Cir. 2004)). "[W]hile many cases applying N.Y.C.P.L.R. 5501(c) 'reduce awards to $30,000 or below,' . . . others 'uphold awards of more than $100,000 without discussion of protracted suffering, truly egregious conduct, or medical treatment.'" *Id.*

Defendant argues that the jury award of $150,000 in compensatory damages exceeds the damages that can be supported by the evidence. According to defendant, the jury failed to give adequate consideration to the fact that plaintiff's

emotional distress largely stemmed from personal issues not chargeable to the Transit Authority.

Plaintiff was awarded emotional distress damages for her federal, state, and local claims. Although jurors heard testimony about issues plaintiff was facing in her personal life, they were instructed not to consider these personal issues in determining an award for compensatory damages. Moreover, there was sufficient evidence for the jury to attribute plaintiff's pain and suffering to the actions of the Transit Authority. Plaintiff testified that as a result of being out of work for one and one-half years she lost income, could no longer contribute to her grandson's schooling or afford to pay for her apartment, and had to move. She also testified that during this time period she felt and looked depressed, frustrated, and helpless. Her testimony was supported by the testimony of her colleague, who stated that she appeared fatigued following her removal from the train operator position, and her sister, who stated that she appeared exhausted and depressed. In addition, Simmons's treating psychologist, Dr. Rountree, testified that the main stressor in Simmons' life during the time period in question was her employment situation.

Although the damages awarded by the jury approach one award reduced in a case cited by defendant, *see Raninone,* 388 F.Supp.2d at 125-126 (collecting cases and reducing $175,000

award for Title VII retaliation with some medical support to $50,000), the damages awarded here are substantially lower than those reduced in the other cases collected and do not shock the conscience.  In all events, using the state standard of material deviation and noting the wide range in awards upheld under state law even in the absence of protracted suffering and medical treatment, *e.g. Cross,* 417 F.3d at 258, I conclude that the jury's award for pain and suffering does not materially deviate from reasonable compensation.  Accordingly, defendant's motion for a new trial on damages or remittitur is denied.

## Conclusion

For the reasons set forth above, defendant's motion for judgement as a matter of law, or in the alternative a new trial, is denied.  The Clerk is directed to transmit a copy of the within to the parties and the magistrate judge.

SO ORDERED.

Dated:     Brooklyn, New York
           July 17, 2008


           By:     /s/ Charles P. Sifton (electronically signed)
                         United States District Judge